**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RITA HOKE, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case no. 16-cv-01174 |
| | ) | |
| DANIEL J. ABRAMS, and | ) | |
| ASHWINI SHARAN, individuals | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants and Third | ) | |
| Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAMERON C. HORAN, an individual, | ) | |
| | ) | |
| Third Party Defendant | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

Defendants Daniel J. Abrams and Ashwini Sharan, through their undersigned counsel and pursuant to Fed. R. Civ. P. 56, the Northern District of Illinois Local Rules, and this Court's Practice Standards, hereby file their Motion for Summary Judgment and Memorandum of Law in Support, and in support thereof, state as follows:

### I. INTRODUCTION

Plaintiff Rita Hoke has sued Defendants pursuant to the Illinois Wage Payment and Collection Act ("Wage Act" or "Illinois Wage Act") for compensation she alleges she was owed but did not receive during the time she was an employee at Integrated Care Pharmacy, LLC ("ICP"). Her claims, however, fail for a number of reasons. First, there was no employment contract or agreement pursuant to which Hoke could have been paid – the amounts she claims

1

she was owed were not agreed upon, definite or certain.  Second, individual liability under the Wage Act requires that the individual be aware of the compensation arrangement and also that the individual knowingly permit the alleged violation both of which are lacking here.  ICP was failing during the time period Hoke claims she was owed money, and under settled Illinois law, no money is therefore due to Hoke.  Third, Hoke breached the duties she owed as a member of the limited liability company as well as an employee of ICP by concealing the continued presence of mold in the ICP facility.  She is not entitled to compensation during the time of her breach.  No genuine issues of material fact remain with regard to Hoke's claims for compensation pursuant to the Wage Act and Defendants Abrams and Sharan are entitled to summary judgment on her claims.

## II.  ARGUMENT

### A.  Standard of Review

Summary judgment is appropriate where there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."  *Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009).  However, "[i]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Dorsey v. Morgan Stanley,* 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 489-90 (7th Cir. 2007) (citations omitted).  Summary judgment, then, is the "put up or shut

2

up" moment in the litigation, when a party must "show what evidence it has that would convince a trier of fact to accepts its version of the events." *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2007) (citations and quotation omitted). Based on the summary judgment standard, Defendants are entitled to judgment as a matter of law.

**B. No Claim Exists Under The Illinois Wage Act And Defendants Are Entitled To Summary Judgment.**

Hoke has sued Defendants for allegedly violating the Illinois Wage Payment and Collection Act. The Illinois Wage Act provides employees a cause of action to collect payment of earned wages or final compensation due to them, including after they leave a job. *See generally* 820 ILCS 115/4-115/6 (2015). The Wage Act is applicable to all employers and employees in Illinois. 802 ILCS 115/1 (2015). The Wage Act defines "final compensation" as compensation "owed by the employer pursuant to an employment *contract or agreement* between 2 parties." 820 ILCS 115/2 (2015) (emphasis added).

Hoke claims she was not paid her base salary, deferred base salary, unpaid bonus and expenses from July 20, 2013 through September 10, 2013, the day she resigned from ICP. Complaint at ¶¶ 22, 29, 36, 43. Specifically, she seeks $20,769.21 in "unpaid, earned base salary." She also claims she is owed $46,667 in "deferred earned base salary." Next, she seeks $46,667 in "deferred earned" bonus. Finally, Hoke seeks $12,996.04 in unpaid business related expenses. *See* Complaint at ¶¶ 22, 29, 36, 43. There are a number of problems with Hoke's claims, all of which are fatal to her claims and entitle Defendants to summary judgment.

**1. The terms of the alleged contract between Hoke and Defendants were not clear and definite.**

To have a valid claim pursuant to the Wage Act, there must be an "employment contract or agreement between 2 parties." 820 ILCS 115/2 (2016). In this case, such an agreement did not exist because the terms were not certain or definite and, without agreed upon definite terms,

3

there can be no contract or agreement, making recovery for an alleged violation of the Wage Act impossible.

The elements of an enforceable contract are "(1) offer and acceptance; (2) definite and certain terms; (3) consideration; and (4) performance of all required conditions." *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.,* 864 N.E.2d 927, 937 (Ill. App. 2007) (internal citations omitted). In Hoke's case, there are a number of essential elements that are missing, which prohibits the existence of an enforceable contract.

As an initial matter, Hoke admits that she never signed an employment contract with ICP. *See* Statement of Undisputed Facts ("SUF") at ¶ 14. Moreover, the terms Hoke claims comprised the contract or agreement were not definite or certain, a requirement for an enforceable contract. *See Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.,* 864 N.E.2d at 937.

### a. The "deferred earned" base salary Hoke seeks is not recoverable because the terms were not definite, certain or agreed upon.

To be enforceable, the terms of a contract must be definite and certain. *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.,* 864 N.E.2d at 937. Hoke, however, testified to a number of different uncertainties in her "contract or agreement" with ICP as it relates to the "deferred earned" base salary. First, Hoke testified that she had a conversation with Mr. Horan who said her salary was going to be $150,000. SUF ¶ 15. In response, Hoke testified that she told him she thought they had agreed on a salary of $206,000. *Id.* According to Hoke, Horan explained that the company could not afford that salary. *Id.* Hoke then claimed that the additional compensation (the difference between $150,000 and $206,000) was going to be deferred and, once the company got to a break-even point, she would receive the additional $56,000, but she does not remember what the trigger was going to be. SUF ¶¶ 15, 16. Hoke

4

further testified that they never agreed when the deferred compensation was going to be paid, stating "[w]e didn't agree on that." SUF ¶ 16. She also stated that "it was just at some future date" and "it was just left open." *Id.*

Thus, Hoke admits that there was never an agreement regarding when the so-called deferred base salary compensation was going to be paid or what would trigger such a payment. A term cannot be considered definite and certain if Hoke admits that an important aspect of the term was never agreed upon. Therefore, there was no contract or agreement pursuant to which the deferred base salary Hoke seeks could have been paid. Because no disputed issues of fact remain, summary judgment should be entered on the claim for relief which seeks "deferred earned base salary."

Moreover, even if the above statements were the "definite terms" that were part of a contract or agreement with ICP, Hoke admits that ICP was never break-even. SUF ¶ 18. In order for a contract to be an enforceable, all conditions must have been performed. *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.,* 864 N.E.2d at 937. In this instance, the condition Hoke contends was part of the agreement was never met – as she admits. Thus, there remain no disputed issues of material fact concerning the "deferred earned" base salary. The condition precedent was never satisfied – ICP was never break-even – and there existed no contract or agreement entitling Hoke to the payment she seeks. No genuine issues of material fact exist and Defendants are entitled to summary judgment on the claim.

### b. The terms of the deferred bonus were not definite or certain.

Similarly, the terms of Hoke's bonus were also not definite or certain. Thus, no contract or agreement exists as it relates to the deferred bonus pursuant to which Hoke can recover. Hoke contends that her bonus was an "automatic" bonus amounting to 25% of her base salary.

SUF ¶ 19. Based on her contention that her base salary was actually $206,000, rather than $150,000, Hoke contends that her bonus was supposed to be 25% of the higher number. *Id.*

Hoke admits, however, that it was never agreed upon when the bonus would be paid. SUF ¶ 19. Hoke also explained that they (Hoke and Horan) never discussed what was required on her part to earn the bonus. *Id.* She further explained "[w]e didn't talk about specifics around the bonus, no." *Id.* Just like the deferred salary, the terms of the contract or agreement surrounding the bonus were not definite, certain, or agreed upon. Thus, Hoke cannot recover on her claim seeking payment of a bonus with terms that were not definite or certain and summary judgment should enter on this claim.

### c. The December 10, 2010 letter is not an enforceable contract.

At times, Hoke has taken the position that a December 28, 2010 letter from Horan to Hoke constitutes her contract of employment or the beginning of her agreement with ICP. SUF ¶ 20. Hoke has also stated, however, that this letter represents her agreement to become a contractor with ICP. SUF ¶ 21.

To the extent the December 28, 2010 letter could be construed as a contract, the terms of that document contain a condition precedent that never occurred, making it an unenforceable contract. *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.,* 864 N.E.2d at 937 (noting that conditions must be satisfied to have an enforceable contract). Specifically, the letter states:

> As ICP is currently seeking funding to make its initial acquisition of a compounding pharmacy this offer is contingent on the first acquisition successfully closing.

SUF ¶ 20.

This initial acquisition never occurred. SUF ¶ 20. Thus, the contingency made part of the December 28, 2010 letter never came to fruition. Therefore, the December 28, 2010 letter is

not a contract or agreement under which Hoke could be paid pursuant to the Wage Act and any

claim based on that letter should be dismissed and summary judgment should enter on the claim.

### 2. Defendants lacked the required knowledge of Hoke's alleged compensation arrangement to be liable under the Wage Act.

Hoke testified that she never had a discussion with the Defendants regarding the terms of

her arrangement with ICP. SUF ¶ 17. Instead, she only spoke with Mr. Horan. *Id.* Mr. Abrams

and Mr. Sharan had no knowledge of Hoke's alleged compensation arrangement, including the

"deferred earned base salary" and the "deferred bonus." SUF ¶¶ 17, 22.

To incur individual liability under the Wage Act, an officer must "(i) have *knowledge* of

the compensation arrangement … and (ii) knowingly permit the corporation to wrongfully deny

some amount of compensation by participating in the decision to do so." *In re Montalbano,* 486

B.R. 436, 443 (Bankr. N.D. Ill. 2013) (emphasis added) (quoting Richard L. Miller II & John

Haarlow, Jr., *Departing Executives and the Wage Payment Act,* 96 Ill. B.J. 138, 142 (2008)).

As an initial matter, Mr. Abrams and Mr. Sharan lacked the requisite knowledge of the

compensation arrangement to be held individually liable pursuant to the Wage Act. First, as

Hoke testified during her deposition, she never had a discussion with Mr. Abrams or Mr. Sharan

regarding the terms of her arrangement with ICP. SUF ¶ 17. Instead, she only spoke with Mr.

Horan. *Id.* She also admits that she never had a discussion with Mr. Abrams regarding her

bonus. *Id.* Similarly, she never had a conversation with Mr. Sharan regarding her bonus. *Id.*

Instead, she "expected [Abrams] to become aware" of the arrangement. *Id.*

Hoke's expectation that Mr. Abrams would "become aware" of her compensation

agreement does not constitute knowledge on the part of Mr. Abrams or Mr. Sharan. *See Corso v.

Suburban Bank & Trust Co*., No. 03 C 9424, 2006 WL 418665, *8 (N.D. Ill. Feb. 16, 2006)

(concluding no individual liability where the individual defendants were not in a position to

withhold bonuses and did not consult with the Compensation Committee regarding bonuses). "Personal liability is reserved for those decisions makers who knowingly permitted the [Wage Act] violation." *Andrews v. Kowa Printing, Corp.,* 838 N.E. 2d 894, 899-900 (Ill. 2005).

Based on Hoke's testimony, Mr. Abrams and Mr. Sharan did not have the requisite knowledge of the compensation arrangement to incur individual liability on a Wage Act claim. There exists no genuine issue of material fact and Mr. Abrams and Mr. Sharan are entitled to summary judgment on the claims against them seeking recovery of deferred base salary and the deferred bonus.

### 3. There can be no recovery under the Wage Act because there was no intentional withholding of funds; there was no money available to pay Hoke.

In order to recover pursuant to the Wage Act, there must have been intentional withholding of money on the part of the employers. Specifically, Section 13 of the Wage Act is "triggered by some intentional misdirection or withholding of funds otherwise available to pay wages." *In re Montalbano,* 486 B.R. at 443 (citing *Andrews v. Kowa Printing Corp.,* 838 N.E.2d at 902).

To incur individual liability under the Wage Act, an officer must "(i) have knowledge of the compensation arrangement … and (ii) *knowingly permit* the corporation to wrongfully deny some amount of compensation by participating in the decision to do so." *In re Montalbano,* 486 B.R. at 443 (emphasis added) (internal citation and quotation omitted). In this matter, there is no evidence that Defendants knowingly permitted any violation of the Wage Act. There was no intentional misdirection or withholding of funds otherwise available to pay wages.

Mr. Abrams and Mr. Sharan did not knowingly permit the wrongful denial of compensation. Instead, ICP did not have funds to pay Hoke the compensation she is seeking. ICP was having financial trouble. SUF ¶ 23. Moreover, Hoke knew about the financial issues.

8

*Id.* In addition, there was no agreement that ICP would continue to pay Hoke after July 23, 2013 when she was told there was no money to meet payroll. SUF ¶¶ 26-28. Indeed, Hoke admitted in an email dated September 3, 2013 that the was no agreement to pay her stating "I consider myself in limbo." SUF ¶ 29.

     Significantly, owners of a business are not required to put money into a failing business. *See generally Freehauf v. TCB Design/Build, LLC,* No. 1-13-2928, 2014 IL App (1st) 132928-U (Ill. App. 2014) (holding that it was reasonable for defendant to rely on company's negative operating balance to conclude that plaintiff was entitled to a smaller bonus; defendants did not "knowingly permit" under Wage Act). ICP was losing money. SUF ¶¶ 23-24. Defendants were infusing capital into ICP in order to keep the company afloat. SUF ¶ 31. Defendants voluntarily used their own money to support the business operations – they were engaged in good faith efforts to keep the company afloat in order to avoid declaring bankruptcy. This does not equate to liability pursuant to the Wage Act. *In re Montalbano,* 486 B.R. at 444. The infusion of working capital in an attempt to keep the company going does not equate to liability under the Wage Act.

     Indeed, "[a] corporation's inability to pay amounts due negates a finding that it behaved willfully under the Wage Act." *Stafford v. Puro,* 63 F.3d 1436, 1441 (7th Cir. 1995) (citations omitted). A court will not subject a defendant to personal liability "solely because he provided such much needed financing to [the company]. To hold otherwise would discourage those most interested in a corporation from attempting to salvage it through an infusion of capital." *In re Montalbano,* 486 B.R. at 447 (internal quotations and citations omitted). Because of the lack of funds at ICP, Mr. Abrams and Mr. Sharan cannot be held liable for failing to pay compensation under the Wage Act. No disputed issues of fact remain about the lack of funds available and

9

summary judgment should enter in favor of Defendants on all aspects of Hoke's Wage Act claim.

### 4. Deferred compensation is not recoverable under the Illinois Wage Act.

Hoke has termed much of the recovery she seeks as some form of deferred compensation. She seeks recovery of deferred base salary and deferred bonus. *See* Complaint at ¶¶ 29, 36. Deferred compensation, as she has termed it, is not recoverable pursuant to the Wage Act and summary judgment should enter on those claims for this reason as well.

"The purpose of the Wage Act is to insure the prompt and full payment of wages due workers at the time of separation from employment, either by discharge, layoff, or quitting." *Armstrong v. Hedlund Corp.,* 738 N.E.2d 163, 171 (Ill. App. 2000). Section 2 of the Wage Act states that:

> Payments to separated employees shall be termed "final compensation" and shall be defined as wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties.

820 ILCS 115/2 (2015). In addition, Section 5 of the Wage Act requires employers to pay "final compensation of separated employees in full at the time of separation" or by the next scheduled paydate for the employee. 820 ILCS 115/5 (2015). If any such compensation cannot be determined as of the "next regularly scheduled payday" after termination, then it is not final compensation under the Wage Act. *Miranda v. MB Real Estate Servs., LLC,* No.1-15-2971, *10 (Ill. App. Nov. 14, 2016).

Hoke contends that most of the money she was owed was some kind of deferred, but earned, compensation. *See, e.g.,* Complaint at ¶¶ 29, 36. Hoke has admitted, however, that many of the terms of this compensation were never agreed upon and were not definite or certain.

10

*See* Section II.B.1., *supra.* Because this aspect of her pay was not definite and certain, it could not have been determined as of the next regularly scheduled payday after termination and therefore, cannot qualify as final compensation pursuant to the Wage Act.

Indeed, Hoke has admitted that she does not recall what the trigger was going to be with regard to her "deferred base salary" but that it might have been when the company reached a break-even point which ICP did not reach. SUF ¶¶ 16-18. She also stated that no agreement existed regarding when this money would be paid and that it was just "some future date." SUF ¶ 16. Thus, the "deferred base salary" cannot constitute final compensation pursuant to the Wage Act, because according to Hoke's testimony, it was not agreed upon when it would be paid and what might trigger the payment. Such payment cannot constitute final compensation if has not been earned and cannot be determined. As detailed above, the terms of the contract or agreement were not in writing and were not certain or definite making it impossible to be determined by the next regularly scheduled payday. *See Miranda v. MB Real Estate Servs., LLC,* No.1-15-2971, at *10. No genuine issues of material fact exist and summary judgment should enter for Defendants on the claim for deferred base salary.

Similarly, Hoke seeks payment of a deferred bonus. Yet, Hoke admits that there was no agreement on when the bonus would be paid or what was required by her to earn the bonus. SUF ¶ 19. Moreover, Hoke explained that "[w]e didn't talk about specifics around the bonus[.]" *Id.*

Thus, like the deferred base salary, the deferred bonus cannot be considered final compensation pursuant to the Wage Act. The terms were not definite and certain. And because no specifics were discussed regarding the bonus, including when it would be paid and how Hoke would earn the bonus, it cannot qualify as a payment that can be determined by the next payday after termination. *See Miranda v. MB Real Estate Servs., LLC,* No.1-15-2971, at *10. No

11

genuine issues of material fact exist concerning the deferred bonus and summary judgment should enter in Defendants' favor on the claim seeking payment of a deferred bonus.

### C. Hoke's Breach Of Her Duties Negates Compensation During The Time Of The Breach.

Hoke breached the duty of loyalty she owed as a member of the LLC as well as the duty she owed as an employee of ICP. Hoke actively concealed relevant information regarding the presence of mold in the ICP facility. SUF ¶¶ 37-42. She failed to properly inform the Illinois Board of Pharmacy inspector regarding the presence of mold in the facility. *Id.* at ¶¶ 46, 54. She also failed to tell Defendants, her partners in ICP, that she had not actually remedied the mold situation. Instead, she told them she was taking care of the problem but knowingly hired a company that would not remove mold. *Id.* at ¶¶ 41, 42. Hoke is in breach of her fiduciary duties owed as a member of ICP and the duty of loyalty owed during the time she was an employee of ICP. Therefore, she is not entitled to compensation during the period of breach.

"An agent owes its principal a fiduciary duty to treat the principal with the utmost candor, care, loyalty and good faith." *LaSalle Bank Lake View v. Seguban,* 937 F. Supp. 1309, 1324 (N.D. Ill. 1996). Under Illinois law, employees as well as officers and directors owe a duty of loyalty to the employer. *Riad v. 520 S. Michigan Ave. Assoc. Ltd.,* 78 F. Supp. 2d 748, 763 (N.D. Ill. 1999). Hoke was both an employee, an investor and a member of ICP. *See* SUF ¶¶ 2, 4.

"An agent is entitled to compensation only on a due and faithful performance of all his duties to his principal." *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.,* 413 N.E.2d 1299, 1314 (Ill. App. 1980) (internal quotations omitted). If an employee is in breach of her duties, she is not entitled to compensation during the time of the breach. *Wabash, Inc. v. Avnet, Inc.,* 516 F. Supp. 995, 1000 (N.D. Ill. 1981); *Vendo Co. v. Stoner,* 321 N.E.2d 1,

14 (Ill. 1974); *Restatement (Second) of Agency* § 469. "[I]t makes no difference whether the result of the agent's conduct is injurious to the principal or not, as the misconduct of the agent affects the contract from considerations of public policy rather than of injury to the principal." *Steinmetz v. Kern,* 32 N.E.2d 151, 154 (Ill. App. 1941).

> **1. Hoke knew of the mold in the facility but failed to inform the Board of Pharmacy.**

Hoke breached her duties by knowingly covering up the presence of mold in the facility. She failed to report the issue to the Board of Pharmacy during the inspection or otherwise. SUF ¶ 46. Hoke served as the Pharmacist in Charge of ICP during the time she filed the original application for ICP's pharmaceutical license. *See* SUF ¶ 34. She included her pharmacist license number on the application. *See id.* Andrea Cruz, the investigator and inspector for the Illinois Department of Financial and Professional Regulation testified that Hoke had a duty to be open and honest with the Board of Pharmacy concerning the cleanliness of the facility and the known presence of mold in the facility because she is a licensed pharmacist in the State of Illinois and the prior Pharmacist in Charge for ICP. *See* SUF ¶¶ 43-47; 50.

Hoke has admitted that she knew of the presence of mold in the building when the building was initially leased and that she alerted the landlord to the presence of mold in the insulation in an email dated December 24, 2012 but that she never told the Board of Pharmacy about the mold. *See* SUF ¶¶ 37, 38, 39, 46. Moreover, Andrea Cruz that both Hoke and Kelly Calvert (the subsequent Pharmacist in Charge) should have notified the Board of Pharmacy of the substantial work that occurred on the building and about the presence of mold in the building.

*See* SUF ¶ 49.  Hoke failed to inform the Board of Pharmacy of any of those items.[1] *See* SUF ¶¶ 38; 42.

### 2.  Hoke did not properly remediate the mold and she knew it.

She also failed to alert her employer and business partners about the continued presence of the mold in the facility.  Intentionally hiding such information violates her duties as a licensed pharmacist as well as her duties to ICP and its members.  *See* SUF ¶¶ 57-60.

Hoke was in charge of remediating the mold in the building.  The Operating Agreement provided that Hoke was in charge of health and safety issues noting that "the highest ranking officer holding a pharmaceutical license shall make all health and safety determinations regarding the sale and/or distribution of pharmaceutical products by the Company."  SUF ¶ 3. In addition, when asked by Defendant Abrams if she needed any help with the mold issues, Plaintiff replied "[n]ope."  *See* SUF ¶ 41.

Despite her responsibilities, Hoke never hired a mold remediation company.  Instead, she admitted that she hired O3 Clean Gear to address the smell in the building.  *See* SUF ¶ 42.  O3 Clean Gear was not a mold remediation company but rather a company that could improve the smell in the facility.  SUF ¶ 42.  Hoke had discovered the mold weeks before the facility inspection on January 23, 2013 but did not share this information with the Board of Pharmacy or the inspector from the Board of Pharmacy.  SUF ¶ 46.

---

[1] Hoke's failure to inform the Board of Pharmacy of the unsanitary conditions in the facility may also be a violation of the federal Food, Drug and Cosmetic Act which requires that drugs be prepared in sanitary conditions. A drug is considered to be adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health." Ex. 19 (21. U.S.C.A. § 351; Federal Food, Drug, and Cosmetic Act § 501(a)(2)(A)).

14

Hoke's disloyal acts undermined the entire business of ICP. Hoke testified that she knew about the mold when the Board of Pharmacy inspected the facility but that she failed to inform the inspector of the mold at any time. *See* SUF ¶¶ 46; 54. Indeed, Hoke says she knew about the mold when she first went into the facility at the time the lease was signed. *See* SUF ¶¶ 37-38. The drug compliance investigator, Andrea Cruz, testified that the licensed pharmacists had a duty to be open and honest with the Board of Pharmacy during the inspection about the presence of mold. *See* SUF ¶¶ 47-49.

Similarly, Defendants' designated expert Sudhir Manek believes that Hoke violated her duties as a licensed pharmacist by failing to disclose important information regarding the presence of mold in the facility. SUF ¶ 58. Moreover, it is Mr. Manek's opinion that Hoke should be disciplined for her failure to alert the inspector to the presence of mold and that she bears a major share of the responsibility in causing the financial loss to ICP. SUF ¶¶ 59-60. Defendants' second expert Ken Muhvich testified that the discovered organisms can cause patient illness and that the ongoing water leaks in the facility should have been addressed as well. SUF ¶¶ 51, 55, 62. Mr. Muhvich also testified that Hoke failed to perform appropriate due diligence for patient safety of a drug preparation facility. SUF ¶ 63.[2] All of these failures by Hoke were breaches of various duties she owed and hurt ICP's business.

Because of all these breaches of her duties. which served to undermine the business of ICP, Hoke is not entitled to any compensation during the time she was in breach of the duties owed to Defendants. *See, e.g., Wabash, Inc. v. Avent, Inc.,* 516 F. Supp. at 1000. Thus, Hoke is not entitled to any compensation pursuant to the Illinois Wage Act or otherwise and summary

---

[2] Hoke did not designate an expert to rebut either of Defendants' experts.

15

judgment should enter in favor of Defendants Abrams and Sharan on the Wage Act claims against them.

### III.    CONCLUSION

Hoke is not entitled to payment under the Illinois Wage Act.  A contract or agreement with definite and certain terms did not exist to pay her the deferred compensation she claims to be owed.  In addition, Defendants did not knowingly permit a Wage Act violation, as the statute requires.  And Hoke is not entitled to compensation during the time she was in breach of the duties owed to ICP as an employee and as a member of the LLC.  For all of the foregoing reasons, Defendants Abrams and Sharan seek the entry of summary judgment on the claims against them.

Respectfully submitted this 7th day of March, 2017.

*s/ Stephen E. Csajaghy*
Stephen E. Csajaghy
Condit Csajaghy LLC
695 S. Colorado Blvd., Suite 270
Denver, CO  80246
Telephone: 720-287-6600
Facsimile: 720-287-6605
steve@cclawcolorado.com

Christina D. Hatzidakis
Hatzidakis Law
120 S. State Street, Suite 200
Chicago, IL 60603
Telephone:  312.857.5577
Facsimile: 312.674.7446
christina@hatzidakislaw.com

*Attorney for Defendants/Counterclaimants/Third Party Plaintiffs*

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on this 7th day of March, 2017, I electronically served the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF THE MOTION** with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following counsel via email :

Daniel Lynch
Julia Katz
LYNCH THOMPSON LLP
150 South Wacker, Suite 2600
Chicago, IL 60606
*Attorneys for Plaintiff*

David P. Holtkamp
FACTORLAW
105 W. Madison, Suite 1500
Chicago, IL 60602
     and
Andrew D. Johnson
Onsager Guyerson Fletcher Johnson LLC
1801 Broadway, Suite 900
Denver, CO 80202
*Attorneys for Cameron C. Horan*

s/ *Trish D. Schart*
Trish D. Schart