IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RITA HOKE**, | ) |
|     Plaintiff, | )    Case No : 16-cv-1174 |
| v. | )    Judge Thomas M. Durkin |
| | ) |
| **DANIEL ABRAMS**, and | ) |
| **ASHWINI SHARAN**, | ) |
|     Defendants/Third Party Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| **CAMERON C. HORAN**, | ) |
|     Third Party Defendant | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Rita Hoke ("Hoke") by and through her attorneys, Lynch Thompson LLP, hereby states the following as her Response in Opposition to Daniel J. Abrams ("Abrams") and Ashwini Sharan's ("Sharan"; collectively "Defendants") Motion for Summary Judgment ("the Motion"):

**FACTUAL BACKGROUND**

In November 2012, Rita Hoke ("Plaintiff") became an employee of Integrated Care Pharmacy ("ICP"). (Pl. Fact Resp ¶11).[1] Plaintiff's compensation – agreed to in a discussion with ICP's CEO Cameron Horan in October 2012 – included a base salary of $206,000, ($56,000 deferred), $56,000 in non-discretionary bonus and reimbursement of expenses. (Pl. Fact Resp. ¶¶15, 19). That compensation plan remained in place until Plaintiff's resignation on September 10, 2013. (Pl. Fact Resp. ¶¶ 26-29). Plaintiff was not paid from July 20, 2013 – September 10,

---

[1] Hereinafter, Plaintiff's Response and Objection to Defendants' Statement of Undisputed Facts In Support Of Motion For Summary Judgement And Memorandum Of Law will be abbreviated "Pl. Fact Resp."

2013. (Pl. Add. Facts ¶1) [2] Defendants have now moved for summary judgment, but the Motion should be denied.

## ARGUMENT

Summary judgment is a "drastic remedy" that the Court should only grant where the movant's right to it is "clear and free from doubt." *Hallmark & Johnson Properties, Ltd. v. Taylor*, 201 Ill. App. 3d 512, 519-520 (1st Dist. 1990). Summary judgement is proper only where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* "Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant." *Smith v. Greystone All., Inc.*, No. 09 C 5585, 2015 WL 4325495, at *2 (N.D. Ill. July 15, 2015) (internal quotations omitted). Once a plaintiff presents "sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial" summary judgment should be denied. *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995). As set forth below, the Plaintiff will show how the ample evidence supporting her claims under the Wage Act[3] is sufficient to reach a jury. Additionally, Plaintiff will show that each of Defendants' arguments for summary judgment are based on a faulty foundation of misstated law and/or disputed fact, falling far short of eliminating all genuine issues for trial. For all of those reasons, the Motion should be denied.

I. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S WAGE ACT CLAIM SHOULD BE DENIED.**

   **A. Plaintiff Has Ample Evidence Supporting Her Wage Act Claim.**

---

[2] Hereinafter, Plaintiff's Statement of Additional Material Facts will be abbreviated "Pl. Add. Facts."
[3] Hereinafter, the Illinois Wage Payment and Collection Act 820 ILCS 115 shall be referred to as the "Wage Act."

Under Illinois law, "for a person to state a claim under the Wage Collection Act, he or she must plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012) (internal quotations omitted). To fulfill the requirement that Plaintiff was an employee for ICP, Plaintiff submits her own Declaration and the Declaration of ICP's former CEO, Cameron Horan. Mr. Horan states that in "November 2012, ICP hired Hoke as a W-2 Employee." (Pl. Add. Facts ¶ 2). Both Plaintiff's Declaration and Mr. Horan's Declaration establish the terms of the employment agreement. Mr. Horan reports: "Hoke would receive a base salary of $206,000 per year, plus a non-discretionary bonus of $56,000 per year. A portion of Hoke's compensation was treated as earned, but deferred. Hoke was also authorized to incur employment-related expenses, which ICP agreed to reimburse." (Pl. Add. Facts ¶ 3). As additional support, Plaintiff points to multiple facts showing mutual assent to the terms of the agreement describe by Horan including: (1) That Plaintiff was paid in accordance with the agreement for the majority of her employment (Pl. Add. Facts ¶ 4); (2) that ICP's financial documents reflected that she was owed deferred compensation (Pl. Add. Facts ¶ 5); and (3) that Plaintiff was reimbursed for expenses for the majority of her employment. (Pl. Add. Facts ¶ 6). Finally, Plaintiff asserts – through her own sworn testimony – that wages or final compensation are owed to her as she maintained employment from July 27, 2013 – September 10, 2013 without pay, she never received payment for any of her deferred compensation, and she failed to receive payment for numerous reimbursable expenses. (Pl. Add. Facts ¶ 1). Thus, Plaintiff has submitted competent evidence to establish all elements of a Wage Act claim and, therefore, summary judgment for Defendants is inappropriate.

    **B. All Of Defendants' Arguments For Summary Judgment On Plaintiff's Wage Act Claim Misstate The Law And/Or Are Based On Disputed Facts.**

        **1. Plaintiff has shown sufficient evidence of an agreement to pay wages.**

Defendants first argument in support of their Motion posits that a Wage Act claim requires an enforceable contract. In support, Defendants cite section 820 ILCS 115/2 of the Wage Act that states that a Wage Act claim can be based on an "employment contract *OR* agreement between 2 parties." 820 ILCS 115/2 (2016). (emphasis added). In construing this section, Illinois courts have held that a formal contract is not required under the Wage Act. Rather, the employee must present only "facts showing mutual assent to terms that support the recovery." *Landers-Scelfo v. Corporate Office Systems*, Inc., 356 Ill. App. 3d 1060, 1068 (2005). The *Landers-Scelfo* court expressly held that the employee "does not need to plead all contract elements." *Id*. Indeed, no formal discussion of terms is even required. Actions such as previous payment of the employee's wages are enough to show an agreement as, "[e]mployers and employees can manifest their assent to conditions of employment by conduct alone" *Id*.[4]

Here, Plaintiff has submitted her own sworn testimony and the testimony of Cameron Horan to show that the specific agreement between her and ICP was for $206,000 base salary per year ($56,000 considered earned but deferred), a non-discretionary bonus of $56,000 per year, and reimbursement of employment-related expenses. (Pl. Fact Resp. ¶¶ 15, 18, 19). As discussed above, Plaintiff further cites additional facts to show manifestation of ICP's assent to the conditions of her employment: (1) That Plaintiff was paid in accordance with the agreement for the majority of her employment (Pl. Add. Facts ¶ 4); (2) that ICP's financial documents reflected that she was owed deferred compensation (Pl. Add. Facts ¶ 5); and (3) that Plaintiff was reimbursed for expenses for the majority of her employment. (Pl. Add. Facts ¶ 6). Plaintiff has provided more than adequate proof of her employment agreement as a valid basis for her claim to create a genuine

---

[4] Thus, the case cited by Defendants regarding the formal requirements to prove a contract claim *(See* Motion pp. 4-7) are entirely inapposite.

issue for trial and the possibility of a verdict in her favor, summary judgment on this matter in Defendants' favor is not appropriate.

### 2. Defendants' had sufficient knowledge of unpaid wages to support Wage Act claims.

Defendants next argue that they must have had knowledge of the Wage Act violation, and then claim that they were not told expressly by Plaintiff of her compensation agreement. (See ¶¶ 17 and 22 of D's Und. Facts). There is, however, ample evidence in the record establishing Defendants' knowledge of the Plaintiff's compensation agreement and unpaid wages. Specifically, the record contains:

- Emails from Michael Kidd, one of ICP's accountants, identifying that Plaintiff was owed deferred compensation. (Pl. Add. Facts ¶ 7);

- Emails to Cameron Horan identifying that Daniel Abrams had Plaintiff's original offer letter. (Pl. Add. Facts ¶ 8);

- Testimony regarding Daniel Abrams's presence during the negotiation of Plaintiff's original offer letter, on which her compensation was based. (Pl. Add. Facts ¶ 9);

- Emails showing that Daniel Abrams was informed of Plaintiff's compensation agreement both in emails and verbally from the Plaintiff herself. (Pl. Add. Facts ¶ 10);

- An email from both Daniel Abrams and Aswhini Sharan on September 1, 2013 transmitted to their wives which specifically illustrated their knowledge of Plaintiff's $206,000 base pay and 25% bonus. (Pl. Add. Facts ¶ 11).

Based on the foregoing evidence, Plaintiff has established that genuine issues exist for trial regarding Defendants' knowledge of Plaintiff's compensation agreement and ICP's violation of the Wage Act, making summary judgment for Defendants inappropriate.

### 3. ICP had the ability to pay the Plaintiff's wages.

Defendants next argue that ICP's purported financial difficulty relieves them from liability under the Wage Act. No facts have been asserted showing a precarious financial situation for

ICP.[5] Failure to offer such evidence should alone be enough to doom Defendants' Motion for summary Judgement. Furthermore, the evidence on the record shows that ICP did have the capacity to pay the Plaintiff. Here, Plaintiff shows that ICP:

- Instructed its accountant to pay bills totaling over $10,000, on October 1, 2013, less than one month after refusing to pay the Plaintiff's final compensation. (Pl. Add. Facts ¶ 12);

- Paid other employees after Plaintiff's separation. (Pl. Add. Facts ¶ 13);

- Continued operations for over a year after the failure to pay Plaintiff. (Pl. Add. Facts ¶ 14);

- Added Defendant Abrams to the payroll after Plaintiff's separation. (Pl. Add. Facts ¶ 15);

- Hired new employees after refusal to pay the Plaintiff. (Pl. Add. Facts ¶ 16);

- Never declared bankruptcy (Pl. Add. Facts ¶ 17);

The cases cited by Defendants present fact patterns vastly different from the instant matter. In *In re Montalbano*, 486 B. R. 436, 439-440 (Bankr. N.D. Ill 2013), where the employer went out of business, laid off all employees immediately following the unpaid two week pay period, and filed for bankruptcy in the immediate aftermath of the failure to pay employees. Based on those facts, the court relieved the employer of liability due to the true inability to pay. Defendants also cite to *Stafford v. Purro*, 63 F. 3d 1436, 1441 (7th Cir. 1995), but that case actually supports Plaintiff.

In *Stafford*, as here, two owner/officers paid creditors and tendered a check to the plaintiff months before his separation, the court found defendants to have knowingly, or intentionally withheld payment. *Id.* Plaintiff's provide additional cases with facts similar to the instant matter, such as *In Re Carl Faber*, 52 B.R. 563, 566 (Bankr. N.D. Ill 1985), where, as here, the employer paid for business operations instead of paying wages, and the court found personally liability under

---

[5] Defendants' only assertion regarding the financial status of ICP is based on Plaintiff's understanding of ICP's financial status, but that is not enough. (Pl. Fact Resp. ¶ 24)

the Wage Act. Similarly, in *People Ex Rel. Illinois Dept. of Labor v. Brooke Management Corp*, 2016 IL App (1st), No. 151851-U, at *8-9, (Ill. App 2016) *as modified* (Oct. 11, 2016), where, as here, the employer was still providing services, receiving payment for services, paying other employees, and the supervisor was still in control of the employer's day to day activities, the court found personal liability under the Wage Act.

Ignoring their own conduct – where Defendants put additional money into ICP to fund operations that continued into July of 2015 – Defendants argue that an employer is not required to put money into a failing business, but their citation to *Freehauf v. TCB Design/Build, LLC* 2014 Ill. App (1st), No. 132928-U, (Ill. App. 2014), does not support that assertion. In *Freehauf*, the employer was relieved from personal liability due to the reasonableness of his belief that the employee was only entitled to a smaller bonus, and that such bonus had been paid. Contrary to Defendants' assertions, *Freehauf* did not address the obligation of an employer to put money into a so-called failing business. *Id*. Further, In opposition to Defendants' argument, the court in *People ex. Rel. Illinois Dept. of Labor v. Brooke Management Corp.,* 2016 IL App (1st) 151851 – U, *as modified* (Oct. 11, 2016) at * 8-9, found that where, as here, an employer puts money into a business to cover the payment of most employees, but fails to put in the money to cover all employees, then that employer will be personally liable under the Wage Act for failure to cover the unpaid employees.

In sum, Plaintiff has provided ample support showing ICP's ability to pay, leaving a genuine issue for trial, making summary judgment inappropriate.

### 4. Defendants' argument that deferred compensation is not recoverable under the Wage Act is incorrect.

Defendants then aim their argument at one element of Plaintiff's claim, deferred compensation. According to Defendants, the requirement under the Wage Act that all recoverable

7

final compensation must be determinable by the next regularly scheduled payday after separation precludes collection of deferred compensation. However, multiple cases have held that compensation payable after the services were performed is recoverable under the Wage Act. In *In Re Andy Home Improvement Centers, Inc*., No. 95 B 21655, 1997 WL 401583, at *5 (Bankr. N.D. Ill. July 9, 1997), a court addressing the Wage Act found that severance pay and prorated bonus pay were recoverable as they were "in the nature of deferred compensation and were, therefore, owed… at the time of his termination." Likewise, the court in *Camillo v. Wal-Mart Stores, Inc*., 221 Ill. App. 3d, 614, 622 (1991), specifically ruled that bonus pay, much like vacation pay and severance pay is earned pro-rata and is recoverable under the Wage Act, even when a plaintiff is only employed for a portion of the year, and is not employed on the agreed pay out date for the bonus. The court opined that "when an employee renders services to an employer, her right to receive the compensation that the employer promised vests as much as her right to receive wages or any other form of compensation… The lack of promise to vest does not revoke the employer's obligation to pay." *Id* at 620. These decisions clarify that the existence, or lack of existence, of a pay out or triggering event to receive deferred compensation is irrelevant. Illinois courts override any such assigned date, and instead calculate earnings pro rata by length of employment, exactly as the Plaintiff has calculated her demands in this matter.

      In support of their argument, Defendants cite, *Miranda v. MB Real Estate Servs*., 2016 IL App (1st) No. 1152971-U (Ill. App. Nov. 14, 2016), but the facts there are inapplicable here. In *Miranda*, at the plaintiff's separation, the plaintiff made an agreement with his employer for continued monthly payments over an unspecified duration tied to a service contract. The wages the plaintiff sought in his claim were based on that agreement and were for a period of time approximately four years after the separation. *Id.* at *3. Under those very specific circumstances

the court rejected the Wage Act claim, as those wages were not calculable at the time of his separation. *Id.* Here, in contrast, the unpaid deferred wages were earned and calculable as of the time of separation, and are therefore recoverable under the Wage Act.

Defendants cite ¶¶ 16-19 of Def's Und. Facts in support of their arguments that Plaintiff's deferred compensation claims are too uncertain to be recoverable. As addressed above, Plaintiff has objected to all of those facts with citation to her own sworn statement, and Cameron Horan's Declaration. Those citations reveal the certainty of Plaintiff's nondiscretionary bonus and earned but deferred base pay. (Pl. Fact Resp. ¶¶ 16-19). These facts show that there is a genuine issue left for trial making summary judgment inappropriate.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THEIR AFFIRMATIVE DEFENSE SHOULD BE DENIED.

### A. Because The Plaintiff Did Not Enrich Herself, Defendants' Affirmative Defense Fails As A Matter Of Law.

This Court can easily dispose of Defendants' first argument in the final section of the Motion, that Plaintiff breached a duty of loyalty owed as a member of the LLC. It should not have escaped the Defendants memory that they have already asserted this argument as a Counterclaim, and that the Court, after full briefing on the matter, dismissed the argument finding no duty owed in that capacity. Plaintiff will simply refer the Court to their July 19, 2016 ruling dismissing this argument. (Dkt. 38).

In regards to Defendants remaining argument, the only type of employee conduct that Illinois courts have allowed to result in forfeiture of employee wages is when an employee seeks to make a profit at the employer's expense. Plaintiff has submitted Plaintiff's Partial Motion For Summary Judgment on Defendants' Affirmative Defenses 2 and 3 ("Plaintiff's Motion") which,

with extensive support, illustrates Plaintiff's assertion regarding forfeiture of wages. Plaintiff incorporates those arguments here.

In an attempt to argue that Plaintiff's alleged behavior does call for forfeiture of wages, the Defendants Motion cites cases regarding duties owed by an employee to an employer, but fails to discuss the facts of even a single case, and includes citation to cases which do not even address forfeiture of wages.[6] Review of the cases cited by the Defendants which do address forfeiture of wages support Plaintiff's point, and address self-dealing behaviors which harmed the employer. E.g. *ABC Trans National Transport v. Aeronautics Forwarders, Inc.*, 90 Ill. App. 3d. 817 (1980) and *Vendo Co. v. Stoner*, 58 Ill. 2d 289, (1974) (both addressing employees who usurped corporate opportunities by competing with the employers' business); *Wabash Inc. v. Avnet, Inc.*, 516 F. Supp. 995 (N.D. Ill. 1981) (employee misappropriated confidential information for personal gain); *Steinmetz v. Kern*, 375 Ill. 616 (1941) (non-employee fiduciary usurping the plaintiff's opportunity to gain profit for himself).

None of the cases presented by the Defendants reflect a forfeiture of wages due to behavior other than some form of self-dealing. Thus, Defendants' own authority supports the Plaintiff's arguments. Defendants have not – and cannot – provide any cases permitting forfeiture of wages with facts similar to the instant matter, because Illinois law simply does not permit forfeiture of wages without a showing that an employee sought to make a profit at the employer's expense. Accordingly, the behavior alleged in the affirmative defense – which at most alleges (disputed) facts that Plaintiff did a poor job – cannot defeat Plaintiff's Wage Act claim as a matter of law.

---

[6] The Defendants cited *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1995), where forfeiture of wages was not discussed, and the court simply found that an employee embezzling funds was a breach of fiduciary duty. The Defendants also cited *Riad v. 520 S Michigan Ave. Associates Ltd.*, 78 F. Supp. 2d 748 (N.D. Ill. 1999), where forfeiture of wages was not discussed, and the court found that there was not adequate allegations of a breach of fiduciary duty, because there were no allegations of how the employee's alleged solicitation of staff members injured his employer.

B. **Even If The Court Entertains Defendants' Argument Regrading Plaintiff's Alleged Misconduct Or Negligent Performance Related To The Mold Issue, Factual Disputes Prevent Summary Judgment.**

As Plaintiff has established, Defendants can make no argument that Plaintiff is liable to forfeit her wages because she has not enriched herself. Even if such an argument was allowed under Illinois law, Plaintiff disputes Defendants factual presentation (*See* (Pl. Fact Resp. ¶¶ 32-63) and asserts numerous additional facts, including:

- When Plaintiff was involved with ICP, ICP only produced non-sterile pharmaceuticals and never began the necessary steps toward producing sterile pharmaceuticals. (Pl. Add. Facts ¶ 18);

- The initial license application provides no opportunity to discuss the details of the facility, and the alleged mold discovery had not yet taken place at the time of the application, as it was discovered in December of 2012, and the Plaintiff was not even an employee when she submitted the application. (Pl. Add. Facts ¶ 19);

- Kelly Calvert, the pharmacist in charge[7] for ICP starting on December 5, 2012, was pharmacist in charge during the discovery of mold, the remediation of mold and the licensing inspection from the state of Illinois. Kelly Calvert testified that she was in charge of day to day operations of the pharmacy and obtaining the license. (Pl. Add. Facts ¶ 20);

- Plaintiff used O3 to remove smell of soy based media that the prior tenant of the facility used, not to cover the smell of mold. (Pl. Add. Facts ¶ 21);

- In order to remediate mold the Plaintiff hired professional service providers who removed and replaced the ceiling insulation, removed and replaced the ceiling tiles, professionally cleaned the ducts, followed the cleaning instructions provided by Defendants' expert Dr. Muhvich, and used a state of the art environmental monitor. (Pl. Add. Facts ¶ 22);

- Kelly Calvert was the one to sign the inspection document during the initial State Board of Pharmacy inspection of ICP, and she was the one making representations to the Board on behalf of ICP. (Pl. Add. Facts ¶ 23);

- Plaintiff believed the mold had been eradicated, specifically it "had been cleaned up, and it wasn't there anymore." (Pl. Add. Facts ¶ 24);

- Kelly Calvert believed the mold was eradicated. (Pl. Add. Facts ¶ 25);

---

[7] Pharmacists in charge is a term of art from the Pharmacy Practice Act and is defined as "the licenses pharmacists whose name appears on a pharmacy license and who is responsible for all aspects of the operation related to the practice of pharmacy." 225 ILCS 85/3(l).

11

- There are no rules or regulations regarding mold in a non-sterile compounding pharmacy, and no rules or regulations regarding reporting of mold to the State Board of Pharmacy. (Pl. Add. Facts ¶ 26);

- Kelly Calvert was familiar with Illinois requirements; and it would have been her responsibility to insure that ICP was adhering to those requirements. (Pl. Add. Facts ¶ 27);

- Illinois State Board of Pharmacy has no self-reporting requirements. (Pl. Add. Facts ¶ 28);

- The Illinois State Board of Pharmacy neither disciplined nor notified Plaintiff of an investigation into her behaviors while employed at ICP, despite the Defendants submission of a complaint to the Board of Pharmacy outlining the alleged facts of the mold incident. (Pl. Add. Facts ¶ 29);

- The second discovery of mold had no negative impact on ICP and ICP would not have survived regardless of the second discovery of mold due to changes in insurance that lead to no coverage for compounded pharmaceuticals. (Pl. Add. Facts ¶ 30);

- ICP was already planning to relocate facilities before the discovery of the second round of mold. (Pl. Add. Facts ¶ 31);

- New mold was not discovered in the facility until September or October of 2014, over a year after the departure of the Plaintiff. (Pl. Add. Facts ¶ 32)

- Cameron Horan testified that he did not believe Plaintiff to have hidden a discovery of mold from him or anyone else at ICP. (Pl. Add. Facts ¶33)

- Plaintiff never took any action during her employment with ICP that was taking advantage of her position or knowledge to make a profit for herself at ICP's expense. (Pl. Add. Facts ¶ 34)

These facts illustrate numerous reasons that Plaintiff did not perform negligently or even inadequately in her handling of the discovery of mold at the ICP facility. ICP was a non-sterile compounding facility, which was not governed by any rules or regulations regarding the existence of or reporting of mold. Plaintiff did not submit any documentation or provide any false information to the State Board of Pharmacy. Indeed, the State Board of Pharmacy has not voiced a finding of fault in Plaintiff's actions. Even though, as pharmacist in charge, Kelly Calvert was responsible for any licensing or compliance issues that occurred at ICP, Plaintiff not only did not

hide the discovery of mold, but also took reasonable steps to remediate mold. Both Plaintiff and Kelly Calvert believed the mold they discovered had been remediated. Furthermore, the rediscovery of mold occurred more than a year after Plaintiff left ICP. That mold discovery has not been linked to the mold discovered when Plaintiff was employed at ICP. Moreover, no mold discovery has been linked to any harm to ICP, as ICP closed for other reasons. Plaintiff's objections and assertions of additional facts undeniably show that, should the Defendant even be allowed to make such an argument, several genuine issues remain for trial and summary judgment for Defendants on their affirmative defense is inappropriate.

## CONCLUSION

**WHEREFORE**, Rita Hoke respectfully requests that the Court deny Defendants' Motion for Summary Judgment.

Dated: April 20, 2017

                                              Respectfully submitted,
                                              RITA HOKE, Plaintiff

                                              s/     Daniel Lynch
                                              Attorney for Plaintiff

Daniel Lynch (Atty. No. 6202499)
Julia M. Katz (Atty. No. 6296890)
Lynch Thompson LLP
150 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606
Tel: (312) 346-1600
Fax: (312) 896-5883
dlynch@lynchthompson.com
jkatz@lynchthompson.com
docketing@lynchthompson.com

**CERTIFICATE OF SERVICE**

   I, Julia M. Katz, an attorney, hereby certify that on April 20, 2017, I served **Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment** upon all counsel of record by the Court's electronic filing system:

Stephen E. Csajaghy
Condit Csajaghy LLC
695 S. Colorado Blvd., Suite 270
Denver, CO 80246
steve@cclawcolorado.com

Christina D. Hatzidakis
Hatzidakis Law
120 S. State Street, Suite 200
Chicago, IL 60603
christina@hatzidakislaw.com

William J. Factor
David P. Holtkamp
The Law Office of William J. Factor, Ltd.
105 W. Madison St., Suite 1500
Chicago, IL 60602
dholtkamp@wfactorlaw.com

Christian C. Onsager
Andrew D. Johnson
Onsager Guyerson Fletcher Johnson LLC
1801 Broadway, Suite 900
Denver, CO 80202
consager@OGFJ-law.com
ajohnson@OGFJ-law.com

Dated: April 20, 2017

                      /s/ Julia M. Katz