UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RITA HOKE, | |
| Plaintiff, | No. 16 C 1174 |
| v. | Judge Thomas M. Durkin |
| DANIEL J. ABRAMS; ASHWINI SHARAN, | |
| Defendants and Third Party Plaintiffs, | |
| v. | |
| CAMERON C. HORAN, | |
| Third Party Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Rita Hoke alleges that Daniel Abrams and Ashwini Sharan failed to pay her certain wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA") for her work at their company, Integrated Care Pharmacy LLC ("ICP"). R. 1. Abrams and Sharan filed a third party complaint against Cameron Horan, former CEO of ICP, for contribution to any liability they have under the IWPCA. R. 12. They also raised affirmative defenses to Hoke's claims, based on "breach of contract, breach of duty of loyalty, and breach of fiduciary duty" (second affirmative defense); and "fraud, estoppel, waiver, [and] unclean hands" (third affirmative defense). *Id.* at 8. Abrams and Sharan have moved for summary judgment, R. 67; as has Horan, R. 72. Hoke has also moved for summary judgment on Abrams and

Sharan's second and third affirmative defenses. R. 69. For the following reasons, Abrams and Sharan's motion is denied, and Horan's and Hoke's motions are granted.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

Hoke, Abrams, Sharan, and Horan (among other individuals) started ICP to produce pharmaceutical products. *See* R. 19-3. Hoke and Horan have submitted declarations stating that they agreed that ICP would pay Hoke a base salary of $206,000 and an earned bonus of $56,000. *See* R. 82-2 ¶ 4; R. 82-3 ¶ 5. Hoke was issued a W-2 form by ICP. R. 93 at 9 (¶ 2).

In January 2013, mold was discovered in the ceiling of the facility ICP had rented to use for production. Hoke did not disclose the mold discovery during an inspection by the Board of Pharmacy later that month. Hoke "hired professional service providers who removed and replaced ceiling insulation, removed and replaced the ceiling tiles, and professionally cleaned the ducts." R. 93 at 13 (¶ 22).

ICP began to suffer financial difficulties. As of July 23, 2013, ICP could not make payroll. R. 82 at 7 (¶ 24); R. 86 at 4 (¶ 7). Both Hoke and Horan stated in their declarations that in light of the fact that ICP had no money to pay them, they agreed to defer their compensation but continue to work for ICP. R. 82-2 ¶ 9; R. 82-3 ¶ 7. Eventually, however, Horan left ICP on August 23, 2013, and Hoke left on September 10, 2013. R. 82-2 ¶ 9; R. 82-3 ¶ 8.

By October 1, 2013, ICP was able to pay bills totaling over $10,000. R. 93 at 11 (¶ 12). ICP was also able to pay employees, *id.* at 12 (¶ 13); to hire new employees, *id.* at 12 (¶ 16); and to continue operations for over a year after Hoke quit, *id.* at 12 (¶ 14). Mold was discovered again in ICP's facility sometime in September or October 2014, more than a year after Hoke had resigned. R. 93 at 15 (¶ 32).

Hoke seeks payment of her deferred compensation and bonus from Abrams and Sharan as her "employers" under the IWPCA. Abrams and Sharan have moved for summary judgment arguing (1) Hoke did not have an enforceable compensation agreement with ICP; (2) to the extent a compensation agreement existed, they did not have sufficient knowledge of it to confer liability under the IWPCA; (3) ICP

3

could not pay Hoke because it did not have the money; (4) deferred compensation is not recoverable under the IWPCA; and (5) any compensation Hoke was owed was rightfully withheld because Hoke breached her duties to ICP by not properly handling the mold situation. Abrams and Sharan also seek contribution from Horan for any liability they have for failure to pay Hoke.

## Analysis

I. **Hoke's Claims Against Abrams and Sharan**

   A. **Agreement**

The IWPCA permits employees to sue for compensation they are owed by an employer "pursuant to an employment contract or agreement." 820 ILCS 115/2. A "contract is not necessary under the [IWPCA]." *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1068 (Ill. App. Ct. 2d Dist. 2005). Rather, "a worker seeking to recover under [the IWPCA] does not need to plead all contract elements if she can plead facts showing mutual assent to terms that support the recovery." *Id.*; *see also Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012) ("Illinois courts have explained that an agreement under the IWPCA is broader than a contract."). "Mutual assent" can be manifested "by conduct alone"—i.e., an employer "could have manifested its assent to [an agreement with a plaintiff] simply by paying [the plaintiff] according to it, and [a] plaintiff could have manifested her assent to [a defendant] being her employer by continuing to work after it began paying her." *Landers-Scelfo*, 827 N.E.2d at 1068.

Abrams and Sharan admit that Hoke "worked" for ICP, R. 82 at 3 (¶ 12), and was paid "W-2 wages" by ICP. R. 93 at 9 (¶ 2). Thus, Abrams and Sharan's focus on whether Hoke formed a "contract" with ICP, and on whether the compensation Hoke seeks was memorialized in "definite and certain terms," *see* R. 67 at 4-5, is not dispositive as to whether a reasonable jury could find that Hoke had an employment *agreement* with ICP. Moreover, the declarations submitted by Hoke and Horan (ICP's CEO at the time) stating that they agreed that ICP would pay Hoke a base salary of $206,000 and an earned bonus of $56,000, *see* R. 82-2 ¶ 4; R. 82-3 ¶ 5, is sufficient evidence for a reasonable jury to find that Hoke had an employment agreement with ICP that could establish liability under the IWPCA.

**B. Knowledge**

An "employer" for purposes of the IWPCA is any individual or entity that pays "wages" for "work." 820 ILCS 115/2. The statute also provides for liability of "officers of a corporation or agents of an employer who *knowingly* permit such employer to violate the provisions of [the IWPCA]." 820 ILCS 115/13 (emphasis added). Hoke alleges that Abrams and Sharan are liable as officers of ICP.

Abrams and Sharan contend that they "had no knowledge of Hoke's alleged compensation arrangement." R. 67 at 7. They further argue that "[t]here is no support in the [IWPCA] . . . imposing liability on future officers or directors of a company simply because—at some time after an employee departs—they later learn of a disputed claim for compensation by the former employee. . . . [which] is

5

especially true where, as here, these officers or directors were never aware of the terms of the supposed agreement in the first place." R. 92 at 4.

Abrams and Sharan do not argue that they did not control ICP at the time of Hoke's departure from the company. Even if Abrams and Sharan did not gain control of the company and become aware of Hoke's compensation agreement with ICP until after Horan left the company on August 23, 2013, there is evidence that they became aware of the agreement before Hoke left ICP on September 10, 2013. The evidence includes the following: an email from ICP's accountant to Abrams sent on August 30, 2013, noting among other information that ICP owed Hoke $172,184 in "deferred compensation," R. 82-5 at 4; an email Abrams and Sharan sent their wives on September 1, 2013, with an update on ICP's condition, including the information that Hoke had an "annual" salary of $206,000 "with [the] opportunity for 25% bonus with milestones," R. 82-10 at 4; and an email Hoke sent to Abrams on September 6, 2013 (while she was still employed by and working for ICP) noting her salary and deferred compensation, R. 82-7 at 4. Even if Abrams and Sharan did not learn about Hoke's compensation agreement until after Horan left and shortly before Hoke departed, Abrams and Sharan have not cited any authority that such recent knowledge is insufficient to establish liability under the IWPCA.

C.  **Ability to Pay**

"A corporation's inability to pay amounts due negates a finding that is behaved willfully under the [IWPCA]." *Stafford v. Puro*, 63 F.3d 1436, 1441 (7th Cir. 1995). "Accordingly, where [an] . . . employer lacks the ability to pay the

6

compensation, its officers and agents cannot be said to have 'knowingly permit[ted]' the [IWPCA] violation." *Elsener v. Brown*, 996 N.E.2d 84, 101 (Ill. App. Ct. 2d Dist. 2013); *see also Ashley v. IM Steel, Inc.*, 939 N.E.2d 22, 38 (Ill. App. Ct. 3d Dist. 2010) ("We recognize that a corporation's inability to pay employees eliminates any possibility that the employer acted willfully [sic] when failing to compensate employees, thereby negating liability under the Act.").

Here, Abrams and Sharan contend that "ICP did not have funds to pay Hoke the compensation she is seeking." R. 67 at 8. Hoke agrees that ICP did not have funds to pay her during the summer of 2013. That is why she agreed to defer her compensation during that period. But Hoke argues that ICP had the funds to pay her final compensation when she resigned. In support of this argument, Hoke points to the following evidence, which Abrams and Sharan admit: ICP paid bills totaling over $10,000 on October 1, 2013, R. 93 at 11 (¶ 12); ICP paid other employees after Hoke quit, *id.* at 12 (¶ 13); ICP continued operations for over a year after Hoke quit, *id.* at 12 (¶ 14); ICP hired new employees after it refused to pay Hoke, *id.* at 12 (¶ 16); and ICP never declared bankruptcy, *id.* at 12 (¶ 17). This evidence is sufficient for a reasonable jury to conclude that Abrams and Sharan could have caused ICP to pay Hoke the compensation she was owed, such that they can be held liable under the IWPCA.

**D.    Deferred Compensation**

Abrams and Sharan also argue that "[u]nder the express language of the [IWPCA], deferred payments are not recoverable because they are not 'final

7

compensation' that may be paid 'at the time of separation' or by the next scheduled paydate for the employee." R. 92 at 7 (citing 820 ILCS 115/5). But the IWPCA section Abrams and Sharan cite says nothing of the sort. That section provides that employers "shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." It says nothing about "deferred compensation." Although Abrams and Sharan make various arguments that Hoke's compensation was uncertain at the time of her separation, they cite no evidence to that effect, except evidence that there were points in time when ICP was financially unable to pay Hoke. *See* R. 67 at 11 (citing R. 82 ¶¶ 16-18). This uncertainty regarding ICP's ability to pay does not create uncertainty in the compensation due to Hoke. As discussed, Hoke has presented evidence regarding the compensation agreement she formed with ICP while Horan was CEO that would allow a reasonable jury to determine the compensation ICP owed her at the time of her separation from the company.

## II. Abrams and Sharan's Affirmative Defenses

In further support of their motion for summary judgment, Abrams and Sharan rely on their affirmative defenses based on "breach of contract, breach of duty of loyalty, and breach of fiduciary duty" (second affirmative defense); and "fraud estoppel, waiver, [and] unclean hands" (third affirmative defense). Abrams and Sharan argue that Hoke breached her fiduciary duty to ICP in the following ways: (1) "Hoke knew of the mold in the facility but failed to inform the Board of

8

Pharmacy," R. 67 at 13; and (2) "Hoke did not properly remediate the mold and she knew it," *id.* at 14.

In addition to opposing Abrams and Sharan's motion, Hoke has cross-moved for summary judgment in her favor on these affirmative defenses. Hoke argues that "the only affirmative defense to failure to pay an employee earned wages in Illinois is that an employee has no right to their wages when the employee takes advantage of their position or knowledge to make profits . . . at the employer's expense." R. 71 at 4.

In their briefs on these issues, the parties focus entirely on the law governing breach of duties. Although neither side cites law particular to the defenses of fraud, estoppel, waiver or unclean hands (i.e., the third affirmative defense), the Court assumes that the parties believe these defenses are addressed with reference to the law regarding an employee's duty to her employer (relevant to the second affirmative defense).

Employees have a duty to be loyal to their employers, and corporate officers have a fiduciary duty to the corporation. Breach of a fiduciary duty can be a basis for the employer to withhold wages. *See Wabash, Inc. v. Avnet, Inc.*, 516 F. Supp. 995, 1000 (N.D. Ill. 1981) ("Plaintiffs have, however, stated a potentially valid claim for recovery of Brusseau's salary. If Brusseau breached his duty of loyalty to IPM he would not be entitled to compensation during the period of the breach. Avnet, by inducing the breach and conspiring with Brusseau, could be liable for recovery of that compensation." (citing *Whitney v. Fred D. Jones Co.*, 174 Ill. App. 116 (1st Dist.

9

1912))). Under Illinois law "corporate officers owe a fiduciary duty of loyalty to their corporate employer not to actively exploit their positions within the corporation for their own personal benefit or hinder the ability of a corporation to continue the business for which it was developed." *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 415 n. 14 (N.D. Ill. 2001). Illinois courts have also explained that an employee's duty to her employer is not as strict as the duty of a corporate officer. *See Alpha Sch. Bus Co. v. Wagner*, 910 N.E.2d 1134, 1149 (Ill. App. Ct. 1st Dist. 2009) (contrasting corporate officers' fiduciary duty with employees' duty of loyalty not to compete during employment, although they "may plan, form, and outfit a competing corporation while still working for the employer"); *see also Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 825 n.7 (Ill. App. Ct. 1st Dist. 2010) ("The law is clear that employees are held to different standards with respect to fiduciary duties than are corporate officers. Generally, an employee's duty is one of loyalty and noncompetition, while an officer's duty is not to actively exploit the company for his personal gain or hinder its ability to continue its business.").

Abrams and Sharan argue that Hoke breached her duty to ICP because her job performance "hindered" ICP's "ability . . . to continue the business for which it was developed." R. 84 at 9. Hoke argues in opposition that Abrams and Sharan's allegations regarding her job performance amount to mere negligence that is insufficient to establish a breach of fiduciary duty or the duty of loyalty. *See Laba v. Chi. Trans. Auth.*, 2016 WL 147656, at *6-7 (N.D. Ill. Jan. 13, 2016) (citing cases).

It is not clear whether Hoke was an ICP officer or merely an employee, and thus the extent of her duties to ICP is also unclear. It is unnecessary for the Court to make a determination on this issue, however, because Abrams and Sharan have failed to establish a question of fact as to whether Hoke breached any duty at all in performing her job responsibilities (regardless of whether that alleged failure rises to the level of fiduciary duty or mere negligence).

With respect to Abrams and Sharan's first argument in support of their affirmative defenses (i.e., that "Hoke knew of the mold in the facility but failed to inform the Board of Pharmacy"), they have failed to establish that Hoke had a duty to inform the Board of Pharmacy about the presence of mold. Kelly Calvert, ICP's "pharmacist-in-charge" at the time of the Board of Pharmacy's inspection, hosted the inspection and was responsible for communicating with the Board. R. 82-4 at 7 (19:4-9); 8 (22:22–23:20); 23-24 (85:19–87:3); at 51 (194:6-17). She testified that there was no duty to report the mold situation. R. 82-4 at 44 (167:4–168:18); 54 (209:6-22). Additionally, the Board of Pharmacy inspector testified that there is no self-reporting requirement. R. 67-13 at 11 (39:22-24). Abrams and Sharan contend that their expert witness, Sudhir Manek, stated in a report that Hoke had such a duty. R. 68 ¶ 58. But Mr. Manek states only that Hoke "bears responsibility . . . of not disclosing the true condition of safety features of the facility during the inspection." R. 67-17 at 3. His statement that Hoke was responsible for deciding whether to disclose the mold information is not a statement that Hoke was under an affirmative duty to make such a disclosure. Absent a duty to inform the Board of

11

Pharmacy, Hoke's failure to do so cannot establish a breach of fiduciary duty or duty of loyalty.

Abrams and Sharan also argue that Hoke breached her duty to ICP by failing to "properly remediate the mold." But Abrams and Sharan admit that after mold was discovered in the ceiling in January 2013, Hoke "hired professional service providers who removed and replaced ceiling insulation, removed and replaced the ceiling tiles, and professionally cleaned the ducts." R. 93 at 13 (¶ 22). They also admit that after the mold was discovered in January 2013, new mold was not discovered until September or October 2014, a year after Hoke had left ICP. R. 93 at 15 (¶ 32). The only evidence Abrams and Sharan cite to support their contention that Hoke failed to appropriately address the mold situation is the deposition of expert witness Muhvich. *See* R. 68 ¶ 63. But Muhvich testified only in generalities regarding the potential dangers of mold. He did not testify about the specific actions Hoke took to address the mold; i.e., whether the company she hired was competent and did what needed to be done. *See* R. 67-16 (98:3–101:16; 102:21–103:5). Thus, to the extent any failure to properly clean the mold by Hoke could constitute a breach of her duties to ICP, Abrams and Sharan have failed to present evidence that would permit a reasonable jury to reach that conclusion.

Therefore, Hoke's motion for summary judgment on Abrams and Sharan's second and third affirmative defenses is granted, and those defenses are excluded from trial.

## III. Abrams and Sharan's Claims Against Horan

Abrams and Sharan also have brought a third-party claim for contribution against Horan. Horan has moved for summary judgment arguing that he cannot be liable on Hoke's claims because ICP did not have sufficient funds to pay the compensation Hoke seeks in this case before he resigned from ICP.

Abrams and Sharan admit that "ICP did not have money to make payroll" in July 2013. R. 86 at 4 (¶ 7). Indeed, Abrams and Sharan assert that "there was no money to pay Hoke past [July 23, 2013]." R. 82 at 7 (¶ 24). Both Hoke and Horan have testified that in light of the fact that ICP had no money to pay them, they agreed to defer their compensation but continue to work for ICP. R. 82-2 ¶ 9; R. 82-3 ¶ 7. Abrams and Sharan "dispute" this testimony, but they cite no evidence in support of this dispute in particular. *See* R. 86 ¶ 7.

The undisputed evidence shows that ICP did not have the money to pay Hoke after July 23, 2013, which is the date Hoke alleges ICP stopped paying her. The undisputed evidence also shows that Hoke agreed with Horan to defer her compensation. Horan left ICP on August 23, 2013. There is no evidence that ICP was able to pay Hoke before this date. Since the undisputed evidence show that ICP was unable to pay Hoke during the relevant period of time that Horan was still an ICP officer, and that Hoke agreed to defer any compensation she was owed, Horan cannot have "knowingly permitted" ICP to violate the IWPCA. *See Elsener*, 996 N.E.2d at 101. Therefore, Horan's motion for summary judgment is granted, and Abrams and Sharan's claim against Horan is dismissed.

## Conclusion

For the foregoing reasons, Abrams and Sharan's motion for summary judgment, R. 67, is denied; Hoke's motion for summary judgment on Abrams and Sharan's second and third affirmative defenses, R. 69, is granted; and Horan's motion for summary judgment on Abrams and Sharan's third party complaint, R. 72, is granted. A status hearing is set for February 22, 2018, at which at the parties should be prepared to set a trial date.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: February 8, 2018